[No. 5408.]
[No. 3065 C. A.]

KING ET AL. v. MECKLENBURG.

**Bills and Notes—Partnership—Unauthorized Note—Right to Recover.**

Where one buys a note purporting to be signed by a partnership, knowing that it was executed by one of the partners outside the scope of his agency as a partner and outside the scope of the partnership business, he cannot recover thereon against the partnership or either of the non-signing partners, and the indorsee obtaining it after maturity is in no better position, since he takes it subject to such infirmity.—P. 321.

*Appeal from the District Court of Park County.*
*Hon. M. S. Bailey, Judge.*

Action by Morris Mecklenburg against A. J. King, H. S. Wallace and W. J. Wallace, as copartners, doing business as King & Wallace. From a judgment for plaintiff, defendants appeal.

*Reversed and remanded, with direction*
*to enter judgment for defendants.*

Mr. WEBSTER BALLINGER, for appellants.

Mr. C. A. WILKIN, for appellee.

This is an action upon the following promissory note, alleged to be a partnership obligation:

"King, Park Co., Colo., Feby. 2, 1892.

"On or about Feby. 23rd, 1892, we promise to pay to C. L. Ferguson, or order, one hundred dollars.

"$100.00.    KING & WALLACE."

The note was indorsed by the payee to B. M. Mecklenburg, and afterwards assigned to plaintiff.

On a former review the court of appeals ruled that the facts alleged in the answer as it now stands constituted a defense to the note sued on, and reversed the ruling of the lower court sustaining a demurrer thereto. After stating the case as made by the complaint and answer, that court said:

"According to these averments a member of defendant firm executed the note in question without the express or implied authority of his copartners for a purpose outside of the partnership business, and such facts were known to payee, B. M. Mecklenburg, and plaintiff prior to the indorsement to them of such note. Further, the making of the note has at no time been ratified. The gist of these allegations is that defendant firm never made the note sued on. * * * If so, then it is not liable thereon, and the answer states a defense thereto."—*King v. Mecklenburg,* 17 Colo. App. 312, 313.

Upon the case being remanded, the plaintiff filed a replication denying that B. M. Mecklenburg had knowledge of all the facts stated in the answer concerning and attending the execution and delivery of the note before the same was purchased or transferred to her, and denying that plaintiff, prior to his purchase of the note, had such knowledge or notice and, averring that the note was sold, transferred and indorsed by the payee before maturity for full value to B. M. Mecklenburg, and that she acquired the note in good faith for full value in the usual course of business and without notice of any

circumstances impeaching its validity as a negotiable obligation, and that plaintiff acquired the note with the same title and the same rights that his indorser, B. M. Mecklenburg, held thereto.

The cause was tried to the court, the issues joined were found in favor of the plaintiff and judgment rendered for the amount of the note with interest.

To reverse this judgment the defendants prosecute this appeal.

Mr. JUSTICE GODDARD delivered the opinion of the court:

The court of appeals, in its opinion above referred to, correctly announces the rule by which the rights of the respective parties to this controversy are to be determined, and lays down the law of the case applicable to the facts averred in the answer.

The only question, therefore, presented for our consideration is, whether the evidence introduced established the truth of such averments.

It is conceded that the firm of King & Wallace was composed of A. J. King, H. S. Wallace and W. J. Wallace, and was at the time of this transaction doing a general merchandise business at King, Park county, Colorado, and it is abundantly shown that the note in question was given by H. S. Wallace without consulting either of the other members of the firm and without their knowledge or consent, and "that the giving of the note was without the scope of the partnership business of defendant, and that its giving was in no way connected with its business, that at no time since the execution of the note has either of the other members of the firm assented thereto or agreed to pay it." It was executed solely for the accommodation of the payee, Ferguson, by H. S. Wallace, with the understanding that it was to be

taken up by Ferguson out of money due him from the Union Pacific Coal Company on the next pay day, which would occur about February 23rd, the time the note was made payable.

The only controverted fact is, whether B. M. Mecklenburg took the note with knowledge of this arrangement, and was thereby advised of the fact that the note was not connected with or given within the scope of the partnership business of the defendants.

Max Mecklenburg, the husband of B. M. Mecklenburg, and the father of plaintiff, and who represented B. M. Mecklenburg in the transaction, testified:

"I had a talk with H. S. Wallace before I bought the note; I asked him if Ferguson had any money due him, and he said he did from the U. P. Coal Company and they had made a transaction of that kind and if I bought it I would get my money on pay day."

On cross-examination he said:

"I had a talk with Mr. Ferguson about this transaction a day or two before I talked with Wallace; Ferguson said he was going to Cripple Creek and would like to settle the account; he offered to go and get Wallace's due bill; I understood that was to be done; it was to accommodate Mr. Ferguson and it was an accommodation to me.

"Q.—What did you know about it? A.—I understood from Wallace he had the money coming from the coal company on the contract he had there, and Mr. Wallace could exchange this transaction with the coal company and turn the money over to him, and he done that to favor Mr. Ferguson so he could get away. * * *

"Q.—And you knew that Mr. Wallace was intending to collect this from the coal company before

you collected? A.—I supposed he would collect it before; yes, sir.''

This testimony discloses that Mecklenburg, before he purchased the note, was advised of the circumstances under and the purpose for which the note was executed by H. S. Wallace in the firm name, and he, therefore, knew that it was not executed by H. S. Wallace in the course of the partnership business or within the scope of his agency as a partner; and we are unable to find any evidence in the record that supports the finding or conclusion of the court below that ''the note was by the original payee sold and transferred in the regular course of business for full value and without notice of any defect or infirmity, * * * to B. M. Mecklenburg,'' or that the ''making and issuing of it at the time was within the scope of the agency with which each member of a trading copartnership is vested under the firm partnership of which he is a member.'' But, on the contrary, it appears from the undisputed testimony and all the circumstances surrounding the transaction that H. S. Wallace ''executed the note in question without the express or implied authority of his copartners for a purpose outside of the partnership business, and such facts were known to the payee and B. M. Mecklenburg.''

That Max Mecklenburg did not at any time regard the note as a firm obligation is apparent from his subsequent conduct. The firm of King & Wallace ceased doing business on March 10, 1892, and W. J. Wallace lived in Como, where the Mecklenburgs resided, and not until 1895, about three years after the note matured, was he informed of the existence of the note, when his attention was called to it by Max Mecklenburg for the first time, whereupon he repudiated all liability therefor; and King had no notice of its existence until a few months before this

suit was commenced, being nearly six years after its maturity; while, on the other hand, Mecklenburg admits that he had some correspondence about the note with H. S. Wallace in 1894 and about six months before he informed W. J. Wallace of its existence.

In the light of these circumstances and the undisputed testimony of Max Mecklenburg that he purchased the note with the knowledge that it was given for a purpose clearly outside of the scope of the partnership business, a complete defense to a recovery on the note was established as against the original indorsee, under the rule announced on the former appeal, and the plaintiff, Morris Mecklenburg, having obtained the note after it was past due, took it subject to the same defect and infirmity that was available against his indorser, and consequently he is not entitled to recover as against the firm of King & Wallace or either of the non-signing partners.

The present judgment, therefore, must be reversed, and the cause remanded with direction to enter judgment in favor of defendants.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.